

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00388-CV

———————————————

IN THE INTEREST OF T.M., A CHILD

---

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. 19-1362-462

---

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), located in Chapter 152 of the Texas Family Code, articulates the circumstances under which a court has jurisdiction over a child-custody matter. *In re D.S.*, 602 S.W.3d 504, 513 (Tex. 2020); *see* Tex. Fam. Code Ann. §§ 152.001–.317.[1] Jurisdiction turns not only on where the child lives but also where a parent or a "person acting as a parent" lives. *See* Tex. Fam. Code Ann. §§ 152.201, .203.

The Family Code defines a "person acting as a parent" as a person, other than a parent, who

> (A) has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of the child custody proceeding; and

> (B) has been awarded legal custody by a court or claims a right to legal custody under the law of this state.

*Id.* § 152.102(13). "Physical custody" is defined as the physical care and supervision of a child, *id.* § 152.102(14), and "legal custody" is defined as the managing

---

[1]The UCCJEA has been adopted by most states and helps ensure custody determinations are rendered in the state that can best decide the case. *D.S.*, 602 S.W.3d at 513. It advances "an overarching objective of expediency and stability in an increasingly mobile world by helping prevent manipulation of the system and undue complication of child-custody disputes, which can occur when a child is moved from one state to another." *Id.*

conservatorship of a child. *Id.* § 152.102(11). *Cf. id.* § 152.102(16) (defining "visitation" as "possession of or access to a child").

In a single issue in this multistate dispute, Appellant Father complains that the trial court erred by dismissing his suit to modify a North Carolina court's child custody order because he, his child T.M., T.M.'s mother, and T.M.'s maternal grandparents (Appellees J.A. and E.A., who have physical and legal custody of T.M.) all live in Texas, and Father's mother, who lives in North Carolina, is not a "person acting as a parent" under the UCCJEA, both of which findings vest jurisdiction in the trial court to exercise jurisdiction in this modification proceeding. Accordingly, he argues, Texas is now T.M.'s UCCJEA "home state," and the North Carolina court has lost jurisdiction. *See id.* § 152.203.

We sustain Father's sole issue, reverse the trial court's order, and remand the case for further proceedings.

## II. Background[2]

T.M. was born in 2013 in North Carolina, where Father's family lived. In 2015, Mother moved to Texas to live with her parents, and T.M. was shuttled between Texas and North Carolina until January 2016, when a North Carolina court, "on an emergency basis[,] vested temporary custody" of T.M. with Mother and Mother's

---

[2]The following facts are taken from various orders and pleadings to the extent that they are undisputed.

parents.[3]  In May 2016, all of the parties consented to the entry of a temporary custody order by the North Carolina court that allowed T.M. to remain in Texas with Mother and Mother's parents.

On February 13, 2018, the North Carolina court, in its "Order on Permanent Custody, Child Support, and Attorney's Fees," awarded "the legal and primary physical custody" of T.M. to Mother's parents, gave Father monthly supervised visitation in Texas, gave Mother visitation supervised by her parents, and gave Father's parents monthly visitation in Texas.  The order specifically required a third party to supervise Father's visitation for the first six months of the order and then provided that "[a]fter six (6) months of supervised visitation ha[d] concluded . . ., Father and [his parents] [could] visit jointly with the minor child, provided both [of Father's parents] supervise[d] said visitation" in Texas.  The order provided that the parties could deviate from the order's terms only through the written consent of Mother, Father, and their parents.

On the same day that the North Carolina court issued its order, all of the parties gave "notice of voluntary dismissal, with prejudice, of all outstanding motions in [the] case [that had] not yet been heard or adjudicated" and stated that their intention was that the entry of the North Carolina court's order "resolve[] all outstanding matters between all parties."

---

[3]Mother and Father's history of drug abuse led to the North Carolina court's involvement.

4

Father moved to Texas on January 4, 2019.

On February 13, 2019—a year after the entry of the North Carolina court's permanent custody order—Father sought to modify the order in Texas, alleging that the circumstances of the child, a conservator, or other party affected by the North Carolina order had materially and substantially changed. With regard to jurisdiction, Father alleged that the Texas court had jurisdiction to make a child custody determination under Family Code Sections 152.201[4] and 152.203(2)[5] and asked the Texas court to "make a finding that the child, the child's parents, and any person acting as a parent" did not presently reside in North Carolina. Father asked the Texas court to award him joint managing conservatorship, to give him standard possession and access, and to remove the North Carolina court's supervision requirement.

---

[4]Section 152.201 sets out how a court will have jurisdiction to make an initial child custody determination. *See* Tex. Fam. Code Ann. § 152.201.

[5]Section 152.203 states that a court may modify an out-of-state child custody determination if it has jurisdiction to make an initial determination under Section 152.201(a)(1) or (a)(2), Tex. Fam. Code Ann. § 152.203, and, under subsection (2) of this statute, an in-state or out-of-state court has determined that the child, the child's parents, and any person acting as a parent "do not presently reside in the other state." *Id.* § 152.203(2).

5

Mother and her parents each filed a verified plea to the jurisdiction in response to Father's petition, arguing that the North Carolina court retained continuing exclusive jurisdiction because Father's parents continued to live in North Carolina.[6]

The Texas court held a hearing on April 4, 2019, to address Father's contention that his parents no longer qualified as persons "acting as a parent" under the Family Code. *See id.* § 152.102(13). Such a finding would give the Texas court jurisdiction over the modification and end the North Carolina court's continuing, exclusive jurisdiction. *See id.* §§ 152.201–.203. However, the matter was not resolved by the conclusion of the hearing nor in the subsequent proceedings held on May 3, 2019 (reviewing Father's drug test results and history) and June 18, 2019 (reviewing Father's job and home in Texas and his father's illness) while the Texas court tried to contact the North Carolina court.

On June 21, 2019, Mother's parents filed a "Notice of Simultaneous Proceedings" in the Texas court, stating they had filed a motion for contempt and a motion to modify child support in the North Carolina court on May 7, 2019. They attached copies of these motions to their notice. In their verified motion for contempt, Mother's parents alleged that Father had violated the terms of the North Carolina court's permanent custody order because he had not been supervised by

---

[6]At the time that Father filed his petition to modify, his father had terminal lung cancer and had been unable to travel to Texas. Father's father succumbed to his battle with the disease during the pendency of the proceedings in the Texas court.

6

both of his parents on December 31, 2018, and March 17, 2019. In their verified motion to modify child support, Mother's parents asked for the North Carolina court to order Father to pay child support because Father no longer had to pay travel expenses back and forth from North Carolina to Texas.[7]

The Texas court and North Carolina court conversed on July 12, 2019, "about whether North Carolina or Texas ought to retain jurisdiction." *See id.* § 152.206(b). The Texas court then granted the pleas to the jurisdiction on July 25, 2019, finding that the North Carolina court had exclusive continuing jurisdiction under Family Code Chapter 152.

The North Carolina court issued the following findings pertinent to this appeal:

4. There is a pending Order to Show Cause matter yet to be heard having been filed by the interveners on May 7, 2019.

5. Since the conclusion of the trial on Permanent Custody, various other motions have been filed in Denton County, Texas, that concern custody and or visitation of the same minor child herein, [T.M.], born August [XX], 2013.

6. That in response to those motions having been filed in Texas, the Honorable Lee Ann Breading of Denton County, Texas[,] and the undersigned engaged in discussions on July 12, 2019 about whether North Carolina or Texas ought to retain jurisdiction.

7. That at the conclusion of their phone conversation about jurisdiction, both presiding judges agreed North Carolina would continue to exercise jurisdiction over the matter.

---

[7]Mother's parents asked the North Carolina court to order Mother to pay child support as well.

Father asked the Texas court to make findings of fact and conclusions of law, and it did so on September 25, 2019, the same day that it heard his motion for new trial. In its findings, the Texas court found that Father, Mother, Mother's parents, and T.M. were all Texas residents while Father's parents[8] were North Carolina residents; that the North Carolina court had entered a final custody determination order on February 13, 2018; that the Texas court had conferred with the North Carolina court on July 12, 2019; and that the North Carolina court had "determined that [the North Carolina court] continue[d] to have exclusive continuing jurisdiction over" T.M. The Texas court concluded that it had no jurisdiction to modify the North Carolina order.

Father's motion for new trial was overruled by operation of law. Although Father requested additional fact findings to address whether his mother qualified as a person acting as a parent and whether Texas was T.M.'s home state, the trial court did not make any additional findings.[9]

---

[8]By the time the findings were issued, Father's father had died, but the record does not reflect when he died.

[9]Appellees argue that because Father failed to object that the courts' conversation was not recorded or to request any findings of fact or conclusions of law regarding that conversation, the omitted conversation conclusively supports the dismissal judgment, and they refer us to *In re C.H.*, 595 S.W.3d 272 (Tex. App.— Amarillo 2019, no pet.). In *C.H.*, the Texas court found the Indiana court to be a more appropriate forum under Family Code Section 152.207, declined to exercise jurisdiction, and dismissed the alleged father's suit. *Id.* at 275. But in that case, the Texas court made a finding relevant to the case's disposition—that Indiana was the more appropriate forum—and the alleged father did not request any findings of fact

## III. Discussion

Whether a court has subject matter jurisdiction is a question of law that we review de novo. *In re T.B.*, 497 S.W.3d 640, 644 (Tex. App.—Fort Worth 2016, pet. denied) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004)). Whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Id.*

We also review questions of statutory construction de novo. *Colorado Cty. v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017). In construing a statute, the text's plain meaning is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results. *Id.* "[O]ur objective is not to take definitions and mechanically tack them together[;] . . . rather, we consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent." *Cadena Commercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017). Further, we may also consider the object to be obtained by the statute, its context, and the consequences of a particular construction. Tex. Gov't Code Ann. § 311.023.

---

or conclusions of law. *Id.* at 278–79. In contrast, here, Father not only requested findings and conclusions but also requested additional findings and conclusions that would have been pertinent to the unrecorded conversation between the Texas and North Carolina courts, and the trial court affirmatively found that it lacked jurisdiction. Thus, the fact that the conversation was not recorded does not conclusively support the trial court's judgment.

9

We are directed under Chapter 152 to apply and construe the UCCJEA "to promote the uniformity of the law among the states that [have] enact[ed] it." Tex. Fam. Code Ann. § 152.001. North Carolina has enacted the UCCJEA and has made no substantial modifications to the provisions applicable here. *See generally* N.C. Gen. Stat. Ann. §§ 50A-101, 50A-201, 50A-202, 50A-203, 50A-206.

## A. Plea to the Jurisdiction

As a general matter, the person filing a pleading must allege facts that affirmatively demonstrate a court's jurisdiction to hear a case. *In re Forlenza*, 140 S.W.3d 373, 376 (Tex. 2004) (orig. proceeding). Father alleged in his petition to modify that the Texas court had jurisdiction to make a child custody determination under Family Code Sections 152.201 and 152.203(2). Mother and her parents then responded that the North Carolina court had exclusive continuing jurisdiction and that the Texas court lacked jurisdiction under Section 152.203 because Father's parents were persons acting as parents. Because the trial court could not have exercised jurisdiction to modify the North Carolina court's custody determination if Father's mother, his only living parent, was a "person acting as a parent," we begin our analysis by addressing that matter.

## B. "Person Acting as a Parent"

Father argues that his parents were never persons "acting as a parent" under the North Carolina court's order because they never had physical or legal custody of T.M. As set out above, a "person acting as a parent" is someone other than a parent

10

who currently has both physical and legal custody of a child or has legal custody and has had physical custody of the child for a period of six consecutive months within a year before the child custody proceeding's commencement. Tex. Fam. Code Ann. § 152.102(13).

North Carolina's version of Section 152.102(13) is substantially the same. N.C. Gen. Stat. Ann. § 50A-102(13). Father acknowledges that North Carolina's Family Code does not define "legal custody" and "visitation." However, the plain language of the North Carolina court's order awarded to Mother's parents "legal and primary physical custody" of T.M., paralleling the statutory language that defines "person acting as a parent."

It is undisputed that Mother's parents were awarded "the legal and primary physical custody" of T.M. in the North Carolina's February 13, 2018 order while Father's parents were granted only visitation and supervision of Father's visits.[10] Accordingly, we agree with Father that his mother was not a "person acting as a

---

[10]North Carolina's comment to that state's equivalent of Section 152.202(a)(2) notes that the UCCJEA Conference

> decided that a remaining grandparent or other third party who claims a right to visitation[] should not suffice to confer exclusive, continuing jurisdiction on the State that made the original custody determination after the departure of the child, the parents and any person acting as a parent. The significant connection to the original decree State must relate to the child, the child and a parent, or the child and a person acting as a parent. . . .

N.C. Gen. Stat. Ann. § 50A-202 cmt. 2.

11

parent" under either the applicable Texas or North Carolina statutes, and we turn to how this determination affects the Texas court's jurisdiction.

## C. Jurisdiction to Modify Orders

Father argues that after he moved to Texas, Texas acquired jurisdiction to modify the North Carolina order. He also states that we should reverse the trial court's dismissal order and remand the case for a trial on the merits because the trial court's dismissal was not warranted for any other reason.

### 1. Relevant Statutes

The UCCJEA identifies four kinds of jurisdiction: "Initial Child Custody Jurisdiction" (Section 152.201), "Exclusive Continuing Jurisdiction" (Section 152.202), "Jurisdiction to Modify Determination" (Section 152.203), and "Temporary Emergency Jurisdiction" (Section 152.204). *See In re J.P.*, 598 S.W.3d 789, 795 (Tex. App.—Fort Worth 2020, pets. denied). The first three kinds of jurisdiction are pertinent to this appeal.[11] Although the proceeding at issue is a modification, we discuss jurisdiction to make an initial child custody determination and how a court making an initial modification obtains exclusive continuing jurisdiction because they inform a trial court's ability to modify.

#### a. Jurisdiction to make a child custody determination

---

[11]Temporary emergency jurisdiction under Section 152.204 is not applicable here; this provision "gives states broad powers to act first and sort out jurisdictional issues later." *J.P.*, 598 S.W.3d at 795 n.6.

Section 152.201(a) is the exclusive jurisdictional basis for a court to make a child custody determination. *See* Tex. Fam. Code Ann. § 152.201(b); *D.S.*, 602 S.W.3d at 513. Under Chapter 152, a "child custody determination" is "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child," and the term "includes permanent, temporary, initial, and modification orders," but not child support or other monetary obligations. Tex. Fam. Code Ann. § 152.102(3).

The Texas UCCJEA prioritizes "home state" jurisdiction. *In re Brown*, 203 S.W.3d 888, 891 (Tex. App.—Fort Worth 2006, orig. proceeding). "Home state," under Chapter 152, is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding," including a period of temporary absence. Tex. Fam. Code Ann. § 152.102(7). The date a child custody proceeding commences is used as the point of reference from which to determine the child's home state. *Brown*, 203 S.W.3d at 891. "Commencement" means "the filing of the first pleading in a proceeding." Tex. Fam. Code Ann. § 152.102(5).

For a court to make an "initial" child custody determination, where "initial determination" is defined as "the first child custody determination concerning a particular child," *see id.* § 152.102(8), under Section 152.201(a)(1), the court must be a court of the child's home state on the date of the proceeding's commencement or be a court of the child's home state within six months before the proceeding's

13

commencement with a parent or person acting as a parent continuing to live in the home state even if the child is absent. *Id.* § 152.201(a)(1). This is the "home-state jurisdiction" provision. *T.B.*, 497 S.W.3d at 645.

The requirements for the "initial" determination inform the requirements for subsequent proceedings or modifications, *see* Tex. Fam. Code Ann. §§ 152.201–.203, and the physical presence of, or personal jurisdiction over, a party or a child is neither necessary nor sufficient to make a child custody determination, *id.* § 152.201(c). In Texas, a court that loses exclusive continuing jurisdiction can regain jurisdiction if it meets the requirements for initial child custody jurisdiction. *In re Lewin*, 149 S.W.3d 727, 738 (Tex. App.—Austin 2004, orig. proceeding) (citing Tex. Fam. Code Ann. § 152.202(b)).

### b. Exclusive continuing jurisdiction

Except in cases of emergency under Section 152.204, a court of the state that made a child custody determination "consistent with Section 152.201 or 152.203" has exclusive continuing jurisdiction over the determination until *either* (1) a court of the same state determines that "neither the child, nor the child and one parent, nor the child and a person acting as a parent" has a significant connection with that state and that substantial evidence is no longer available in that state concerning the child's care, protection, training, and personal relationships, *see Forlenza*, 140 S.W.3d at 379; *J.P.*,

14

598 S.W.3d at 796–97;[12] *or* (2) a court of the same state or a court of another state, "determines that the child, the child's parents, and any person acting as a parent do not presently reside in [that] state." Tex. Fam. Code Ann. § 152.202(a).

North Carolina's official comment to subsection (a)(2) makes clear that exclusive continuing jurisdiction is lost in North Carolina when a finding is made that the child, the child's parents, and any person acting as a parent no longer reside in the original decree state, providing,

> Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State. . . . It is the intention of this Act that paragraph (a)(2) of this section means that the named persons no longer continue to actually live within the State. Thus, *unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases.*
>
> . . . .
>
> If the child, the parents, and all persons acting as parents have all left the State which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in State B, as well as a court in State A, can decide that State A has lost exclusive, continuing jurisdiction.
>
> . . . .
>
> Jurisdiction attaches at the commencement of a proceeding. If State A had jurisdiction under this section at the time a modification proceeding was commenced there, it would not be lost by all parties moving out of the State prior to the conclusion of proceeding. State B would not have jurisdiction to hear a modification unless State A

---

[12]One parent in *J.P.* remained in Michigan, preventing the application of Section 152.202(a)(2). *See* 598 S.W.3d at 791–94, 796–97.

decided that State B was more appropriate under Section 50A-207 [Section 152.207, in Texas].

Exclusive, continuing jurisdiction is not reestablished if, after the child, the parents, and all persons acting as parents leave the State, the non-custodial parent returns. As subsection (b) provides, once a State has lost exclusive, continuing jurisdiction, it can modify its own determination only if it has jurisdiction under the standards of Section 201. If another State acquires exclusive continuing jurisdiction under this section, then its orders cannot be modified even if this State has once again become the home State of the child.

. . . [T]he State with exclusive, continuing jurisdiction may relinquish jurisdiction when it determines that another State would be a more convenient forum under the principles of Section 50A-207.

*See* N.C. Gen. Stat. Ann. § 50A-202 cmt. 2 (emphases added); *Matter of L.T.*, 843 S.E.2d 199, 201 (N.C. 2020) ("[I]t is undisputed that the second part of this test [under subsection (a)(2)] was met when the [North Carolina] trial court made unchallenged findings that [the child and her parents] no longer resided in Delaware . . . ."); *see also Lewin*, 149 S.W.3d at 736–37 (stating that "[a] court's exclusive continuing jurisdiction does not vanish immediately once all the parties leave the state" but rather resides with the court that made the initial child custody determination unless a finding is made under Section 152.202).

### c. **Jurisdiction to modify a child custody determination**

Section 152.203 addresses jurisdiction to modify the child custody determination by another state's court. *See* Tex. Fam. Code Ann. § 152.203. "Modification" means "a child custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same

16

child, whether or not it is made by the court that made the previous determination."

*Id.* § 152.102(12). Except in cases of emergency under Section 152.204, a Texas court can only modify orders affecting the parent-child relationship from other states if

> a court of this state has jurisdiction to make an initial determination under Section 152.201(a)(1) *or* [(a)](2)[13] *and*:
>
> (1) the court of the other state determines it no longer has exclusive continuing jurisdiction under Section 152.202 or that a court of this state would be a more convenient forum under Section 152.207; *or*
>
> (2) a court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

*Id.* § 152.203 (emphasis added). Although Section 152.203 grants a Texas court the power to exercise jurisdiction if the above elements are met, as pointed out by Appellees, it does not *require* the court to exercise that power. *See In re S.L.P.*, 123 S.W.3d 683, 689 (Tex. App.—Fort Worth 2003, no pet.); *see also* Tex. Fam. Code Ann. §§ 152.201, .203.

### d. Simultaneous proceedings

Regardless of whether dismissal was proper under the preceding sections, Mother and her parents contend that the trial court's order should be affirmed under Family Code Section 152.206. That section, entitled "Simultaneous Proceedings," exists "to deal with situations where a Texas court and the court of another state are

---

[13]That is, with regard to the first question, "assuming no previous custody proceeding in another state, could a Texas court have been the first to decide a custody issue?" *J.P.*, 598 S.W.3d at 796.

'both legitimately exercising custody jurisdiction at the same time,'" generally when there is no "home state." *In re C.H.*, 595 S.W.3d 272, 278 (Tex. App.—Amarillo 2019, no pet.) (quoting *In re J.P.L.*, 359 S.W.3d 695, 710 (Tex. App.—San Antonio 2011, pet. denied)).

Subsection (a) of Section 152.206 provides that except for emergencies under Section 152.204, a Texas court may not exercise jurisdiction under the UCCJEA if, at the time of the proceeding's commencement, a proceeding concerning child custody has been commenced in a court of another state having jurisdiction "substantially in conformity" with the UCCJEA,[14] unless the proceeding has terminated or is stayed by the court of the other state because the Texas court is a more convenient forum under Section 152.207. Tex. Fam. Code Ann. § 152.206(a).

Section 152.206(b) further states that before hearing such a child custody proceeding, the Texas court

> shall examine the court documents and other information supplied by the parties pursuant to Section 152.209.[15] If the court determines that a child custody proceeding has been commenced in a court of another state having jurisdiction substantially in accordance with this chapter, the

---

[14]"Substantially in conformity," generally, would appear to refer back to Sections 152.201–.204 regarding the establishment of jurisdiction under the UCCJEA.

[15]Section 152.209 requires that each party, in its first pleading or in an attached affidavit, give information under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period, as well as the party's participation in any other proceeding concerning the custody of or visitation with the child. *See generally* Tex. Fam. Code Ann. § 152.209.

18

[Texas court] shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the [Texas court] is a more appropriate forum, [the Texas court] shall dismiss the proceeding.

*Id.* § 152.206(b).

Section 152.206(c) addresses proceedings to modify a child custody determination, stating that the Texas court shall determine whether a proceeding to enforce the determination has been commenced in another state, and if so, then the Texas court may (1) stay the proceeding for modification pending entry of an order from the other state's court enforcing, staying, denying, or dismissing the proceeding for enforcement; (2) enjoin the parties from continuing with the proceeding for enforcement; or (3) proceed with the modification under conditions it considers appropriate. *Id.* § 152.206(c). Dismissing the suit is not listed as an option. *See id.* "Child custody proceeding" is defined as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue" but not "enforcement under Subchapter D."[16] *Id.* § 152.102(4).

## 2. Application

In 2016, the North Carolina court made an initial child custody determination and became T.M.'s "home state" court, with exclusive continuing jurisdiction at that time. *See id.* §§ 152.102(7),(8), .201(a)(1), .202(a)(2); *Brown*, 203 S.W.3d at 891.

---

[16]Enforcement under Subchapter D includes the enforcement of a child custody determination. Tex. Fam. Code Ann. § 152.301.

However, by the time the Texas modification suit was filed in 2019, Texas had become T.M.'s "home state." *See S.L.P.*, 123 S.W.3d at 688–89;[17] *see also* Tex. Fam. Code Ann. §§ 152.102(7), .201(a)(1). That is, the record reflects that T.M., his parents, and his maternal grandparents (the persons "acting as a parent") all lived in Texas, that T.M. had lived in Texas with Mother and Mother's parents since May 2016, and that the proceeding commenced on February 13, 2019. *See* Tex. Fam. Code Ann. §§ 152.102(7), .201(a)(1); *S.L.P.*, 123 S.W.3d at 688–89 (determining that Texas court could make initial child-custody determination under Section 152.201(a)(1)). Thus, the Texas trial court could make an initial custody determination at that time. *See* Tex. Fam. Code Ann. § 152.203. Additionally, no "person acting as a parent" resided in North Carolina. *See id.* § 152.203(2).

---

[17]In *S.L.P.*, a Washington court had granted the mother primary custody, and she moved the child to Nevada. 123 S.W.3d at 686. Two years later, a Nevada court gave the father custody, and he moved the child back to Washington. *Id.* The Nevada court subsequently terminated the mother's parental rights. *Id.* The child ran away and traveled with the mother to 36 states and 2 foreign countries before they moved to Texas. *Id.* The mother filed a SAPCR in Texas seeking sole managing conservatorship. *Id.* at 686–87. In analyzing the case under Section 152.203, we concluded that the Texas court had jurisdiction to make an initial child custody determination because S.L.P. had lived with the mother in Texas for over 6 consecutive months and that the Texas court had jurisdiction to modify the Nevada court's child custody determination because neither S.L.P. nor either of the parents were living in Nevada. *Id.* at 689. However, we held that the Texas court did not err by dismissing the mother's petition because it had declined to exercise jurisdiction under the UCCJEA's unjustifiable-conduct provision when, but for the mother's unjustifiable conduct, Texas would not have had jurisdiction at all. *Id.* at 689–90.

Appellees argue that because neither court determined that T.M., his parents, and the persons acting as a parent (i.e., his maternal grandparents) no longer resided in North Carolina before the North Carolina court issued its order on jurisdiction, the North Carolina court still had "jurisdiction substantially in accordance" with the UCCJEA to issue its order.

The record reflects that although the North Carolina court and the Texas court "engaged in discussions" about which court should exercise jurisdiction and "agreed North Carolina would continue to exercise jurisdiction over the matter" before the Texas court dismissed Father's petition, the Texas court subsequently made a finding that T.M., his parents, and his maternal grandparents no longer resided in North Carolina—a prerequisite finding to jurisdiction under Sections 152.202(a)(2) and 152.203(2) for the Texas court (and a finding that effectively ended the North Carolina court's continuing exclusive jurisdiction under North Carolina law). Thus, the trial court erred by also finding that it lacked jurisdiction to modify the North Carolina custody order. *See* N.C. Gen. Stat. Ann. § 50A-202 cmt. 2; *see also Lewin*, 149 S.W.3d at 736–37 (holding that Section 152.202(a)(2) was satisfied when out-of-state court determined that the child and his parents did not presently reside in Texas); *cf. In re S.J.G.*, No. 05-13-01351-CV, 2015 WL 1611833, at *2 (Tex. App.—Dallas Apr. 9, 2015, pet. denied) (mem. op.) (stating that because "the record [did] not reflect a Texas or out-of-state court [had] made a determination that any conditions under [Section 152.202(a)(1) or (a)(2)] were triggered," the Brazos County court maintained

continuing, exclusive jurisdiction); *In re S.K.B.*, No. 2-07-054-CV, 2008 WL 2553388, at *2 (Tex. App.—Fort Worth June 26, 2008, no pet.) (per curiam) (mem. op.) (holding Texas court did not err by declining jurisdiction when mother and child had been living in Japan for years and father lived in Connecticut).

Further, although Appellees argue that Sections 152.207 and 152.208 are independent bases to support dismissal, the trial court did not make any findings about whether Texas was an inconvenient forum, *see* Tex. Fam. Code Ann. § 152.207,[18] or whether unjustifiable conduct might prevent Texas from exercising jurisdiction, *see id.* § 152.208, and nothing on this record permits us to infer fact findings to support the trial court's order on these bases.

Finally, Appellees argue that the Texas court must have applied Section 152.206 because it did not dismiss the proceeding until it received their notice of simultaneous proceedings and then conferred with the North Carolina court, tracking the procedure set out in the statute. But subsections (a) and (b) of Section 152.206 do not apply here because the motions filed in the North Carolina court by Mother's parents were for contempt (pertaining to the supervision of Father's visitation) and for child support, and thus were not motions "concerning the custody of the child." *See*

---

[18]Additionally, dismissal is not an option under Section 152.207. *See generally* Tex. Fam. Code Ann. § 152.207(c) (providing that if a Texas court determines that it is an inconvenient forum and that another court's state is a more appropriate forum, it "shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state").

*generally id.* § 152.206(a)–(b). And the trial court could not have properly applied subsection (c) of Section 152.206 because it affirmatively concluded that it did not have jurisdiction, despite its fact finding that the only people who could be persons acting as parents no longer lived in North Carolina. *See id.* § 152.206(c); *In re E.K.N.*, 24 S.W.3d 586, 592 (Tex. App.—Fort Worth 2000, no pet.).

Accordingly, we sustain Father's sole issue and remand the case to the trial court for further proceedings.

## IV.  Conclusion

Having sustained Father's sole issue, we reverse the trial court's judgment dismissing Father's suit and remand the case for further proceedings.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered:  December 17, 2020